UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLENE M. HAMILTON,

    Plaintiff                                                  Civil Action No. 09-11553

v.                                                                        HON. JOHN CORBETT O'MEARA
                                                                     U.S. District Judge
                                                                     HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION RE: ATTORNEY FEES**

       This is a Social Security Disability Appeal in which the Plaintiff, Charlene Hamilton, won a remand for an award of benefits. Before the Court at this time are her Application for Attorneys' Fees Under the Equal Access to Justice Act ("EAJA") [Doc. #28] and her Petition for Attorney Fees Pursuant to 42 U.S.C. § 406(b)(1) [Doc. #29], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that both motions be GRANTED, under the terms discussed below.

### I.   FACTS

       On April 24, 2009, Ms. Hamilton filed a complaint under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying disability insurance benefits under the Social Security Act. On March 31, 2010, I issued a Report and Recommendation ("R&R") that the Commissioner's decision be reversed, and that the case be remanded for calculation and award of benefits. I reached this conclusion based on the Administrative Law Judge's ("ALJ's") failure to accord proper weight to the opinions of three treating physicians, finding that "the ALJ's rejection of the treating physicians' opinions is neither well-explained nor supported by the record." R&R, at 21. I also found error in the ALJ's credibility determination, the ALJ's flawed hypothetical question and Residual Functional Capacity, and the resultant taint to the Vocational Expert's job finding. *Id.,* 21-25. Judge O'Meara adopted my R&R, entered judgment in Plaintiff's favor, and remanded for an award of benefits.

Plaintiff seeks EAJA fees in the amount of $9,469.25, premised on 47 attorney hours billed at $172.50 per hour, 0.65 attorney hours billed at $170.00 per hour, and 10.01 "law clerk with J.D." hours at $125.00 per hour.

On remand, past due benefits were awarded in the amount of $119,207.40. Plaintiff executed a contingent fee agreement with counsel in the amount of 25% of past due benefits, and based on this agreement, counsel seeks this Court's approval of fees in the amount of $29,801.85,[1] under 42 U.S.C. § 206(b)(1).

## II.   DISCUSSION

### A.   EAJA [Doc. #28]

The Equal Access to Justice Act ("EAJA") is one of some 131 fee shifting statutes enacted by Congress.  *See Coulter v. State of Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986).  Specifically, 28 U.S.C. § 2412(d)(1)(A) provides, in pertinent part:

> "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses...incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States...unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust."

Having won a reversal of the Commissioner's decision and an award of benefits, Ms. Hamilton is clearly a prevailing party. The Defendant does not argue otherwise, and does not contend that its position in this litigation was substantially justified. Rather, the only disputed issue is the amount of EAJA fees to be paid.

Attorney's fees claimed under EAJA must be reasonable.  *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987).  As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." In *Glass*, 822 F.2d at 21, the Sixth Circuit, citing *Coulter v. State of*

---

[1] The Notice of Award apparently indicates that $25,910.50 was withheld for attorney fees. However, if fees are calculated based on 25% of the award, the correct amount is $29,801.85.

*Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

### 1.   Hourly Rate

The statutory hourly maximum under 28 U.S.C. § 2412(d)(2)(A) is $125.00, "unless the court determines that an increase in the cost of living or a special factor,...justifies a higher fee." Cost of living adjustments, as reflected in the Consumer Price Index ("CPI"), are thus allowable under the statute.

The Commissioner challenges Plaintiff's requested hourly rate of $170.00 to $172.00 per hour for attorney time as being improperly derived from the CPI for the Chicago area, rather than the Detroit/Southeastern Michigan area where the case originated. He suggests that if the statutory rate is enhanced at all, it should be capped at $162.00 per hour.[2] *Defendant's Brief, fn. 7*. However, *Cowart v. Commissioner of Social Security*,__F.Supp.2d__, 2011 WL 2441468, *3 (E.D. Mich., 6/13/11), an Eastern District of Michigan case, specifically held that "[g]iven the effect of inflation since 1996, the Court finds that $173.00 per hour is a reasonable rate for work performed from November, 2008 to June, 2010." Notably, the Commissioner did not contest the rate of $173.00 per hour in *Cowart*. *Id*.

In this case, the claimed rate of $170.00 to 172.00 for attorney time is consistent with prevailing EAJA rates in this district, and attorney fees will be computed at those rates. However, the rate of $125.00 per hour for paralegal/law clerk Suzanne E. Blatz is excessive. I recognize that Ms. Blatz has an impressive educational background, including a J.D. from Loyola University Chicago School of Law, a B.A. from the University of Wisconsin, and studies at the Université de Provence. She also has a Certificate in Paralegal Studies from Loyola University, and in the context of this case, she is just that–a paralegal. A highly educated, bilingual paralegal, but a paralegal nonetheless. Moreover, much of her work consisted of administrative tasks such as docketing

---

[2] The Commissioner's argument that there should be *no* adjustment to the $125.00 rate set in 1996 is untenable.

information, e-filing pleadings and obtaining records, tasks ordinarily done by paralegals. Should Ms. Blatz become a licensed attorney, she may be appropriately compensated for *attorney* time. However, based on prevailing rates for paralegals in the Eastern District of Michigan, she is entitled to $75.00 per hour.

## 2.    Number of Hours Claimed

The Commissioner asks that the Plaintiff's fee request be reduced by 6.8 hours, based on work done prior to filing the complaint, and work that could not properly be billed to a private client. The Commissioner's argument is without merit.

First, a review of counsel's time records shows that the time spent prior to filing the complaint was related to and necessary for the eventual district court proceedings. This included seeking an extension of time from the Appeals Council for filing a petition for judicial review, obtaining records, and communication with the referring attorney and the client. This did not involve any substantive work at the administrative level, which would of course not be compensable under EAJA.

The Commissioner also complains that, in effect, counsel has overbilled for tasks that could have been completed more efficiently. However, the test under *Hensely* and *Glass* is not whether the Commissioner or some other attorney might have done the case in less time, but whether the number of hours claimed is reasonable. It is true that the attorney hours claimed in this case–47.65, excluding paralegal hours–is somewhat more than in the typical case. For example, in *Glass*, the Sixth Circuit noted that "the experienced district judge is very likely correct that twenty to thirty hours may well be the norm for attorneys to handle most [Social Security] cases...." 822 F.2d at 20. However, this was not a typical case. It was highly fact-intensive, as reflected in my 28-page Report and Recommendation, of which over 14 pages were devoted to the facts. Moreover, as noted above, counsel ferreted out numerous reversible errors that culminated in a remand for an award of benefits.

As to the Commissioner's argument that some of the tasks were administrative or clerical in nature, I have accounted for that by reducing Ms. Blatz's hourly rate.

Under these circumstances, I find that the number of hours claimed is reasonable, and I am disinclined to quibble over a few hours that the Commissioner subjectively believes were unnecessary.

Therefore, the Plaintiff is entitled to EAJA fees as follows:

| | |
|---|---|
| .65 attorney hours @ $170.00: | $110.50 |
| 47 attorney hours @ $172.50: | $8,107.50 |
| 10.01 paralegal hours @ $75.00: | $750.75 |
| **TOTAL:** | **$8,968.75** |

### 3. To Whom are the Fees Payable?

In *Astrue v. Ratliff,* ⎯⎯ U.S. ⎯⎯, 130 S.Ct. 2521, 2224, 177 L.Ed.2d 91 (2010), the Supreme Court held that EAJA attorney fees belong to the claimant, not to the claimant's attorney, and that the award of fees "is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." In *Ratliff*, the claimant in fact owed the Government a debt that predated the district court's approval of the EAJA award. However, the Court noted, albeit in dicta, that "the Government has...continued the direct payment [to attorneys] practice where the plaintiff does not owe a debt to the government and assigns the right to receive the fees to the attorney." *Id*. at 2259.

In *Cowart, supra*, I held that where, as here, the prevailing plaintiff has assigned EAJA fees to his or her attorney, nothing in *Ratliff* prevents this Court from honoring that assignment and paying the fees directly to the attorney, subject to any offset for a pre-existing debt to the government:

> "Following *Ratliff*, a number of district courts have held that if there is an assignment of EAJA fees, and if there is no pre-existing debt to the Government, then fees should be paid directly to the attorney. *See Hilker v. Astrue,* 2010 WL 5553980, *1 (S.D.Ohio) (fees payable directly to counsel based on assignment because government failed to identify any preexisting debt); *Bates v. Commissioner of Social Sec*. 2011 WL 2149349, *3 (N.D. Ohio 2011) ('If Defendant determines Plaintiff does not owe a debt to the government, and there is a valid assignment of the fees, the Court sees no reason for the government not to honor the assignment and pay the fees directly to counsel'); *Walker v. Astrue*, 2011 WL 1297744, *2 (M.D.Ala. 2011) ('[P]ursuant to the assignment agreement between Plaintiff and counsel, attorney's fees may be made payable to Plaintiff's attorney, subject to any offset which may be

> applicable'). *But see Snyder v. Commissioner of Social Sec*. 2011 WL 66458, *3 (N.D. Ohio 2011) (court order payment directly to plaintiff, with instructions to 'leave it to counsel to collect his fee from Plaintiff in accordance with their agreement').
>
> "In this case, there is a written assignment of any EAJA fees from Ms. Cowart to her attorney. As long she owes no pre-existing debt to the Government, there is nothing in *Ratliff* that would prevent this Court from honoring her assignment. Indeed, to do so would at least partially address Justice Sotomayor's concern, expressed in her concurring opinion in *Ratliff*, that the decision 'will make it more difficult for the neediest litigants to find attorneys to represent them in cases against the Government.' *Id*. at 2532 (concurring opinion of Sotomayor, J.)." *Id*. at *3-4.

As discussed below, Plaintiff's counsel is also entitled to fees pursuant to 42 U.S.C. § 406(b)(1), and by virtue of the 25% contingent fee agreement with his client. Those fees, which are paid out of the past-due benefits, must be offset by the EAJA fees. Therefore, the Commissioner must first determine whether the Plaintiff owes the Government a pre-existing debt. If no such debt is owed, then payment of $8,968.75 in EAJA fees will be made directly to Plaintiff's attorney by operating as an offset to the § 406(b) fees. *See Cutler v. Astrue* 2011 WL 901186, *1 (N.D.Ohio) (N.D.Ohio,2011) (fees payable directly to attorney "after the defendant has completed its customary investigation into any outstanding federal debts owed by the plaintiff"); *Taylor v. Astrue* , 2011 WL 1261138, *2 (N.D.Ill. 2011) ("After the award is entered, if the Government determines that plaintiff owes no such debts, the Government will direct that the fee award and expenses be made payable to plaintiff's attorney pursuant to the EAJA assignment signed by the parties"). If the Plaintiff does owe a pre-existing debt, the EAJA fees will be offset by the amount of the debt, with any remainder to in turn offset the § 406(b) fees. *Cowart, supra*.

### B.   SEC. 406(b) FEES [Doc. #29]

42 U.S.C. § 406(b) directs that a court may allow a "reasonable fee" for court-related services not exceeding 25 percent of a claimant's past-due benefits. 42 U.S.C. § 406(b)(1)(A). As is typical in Social Security Disability cases, Plaintiff entered into a 25% contingent fee agreement with her attorney. In *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002), the Supreme Court recognized the permissibility of contingent fees within the confines of § 406(b), and subject to judicial review for reasonableness:

> "Most plausibly read, we conclude, § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases."

*Gisbrecht* rejected the lodestar approach as the measure of reasonableness in a § 406(b) fee petition, *id.* at 806, giving primacy to the contingent fee agreement, but testing its reasonableness "based on the character of the representation and the results the representative achieved." In making the reasonableness determination, "the court may require the claimant's attorney to submit not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fees yielded by the fee agreement, a record of the hours spent representing the claimant...." *Id*. *Gisbrecht* suggested situations where an attorney is responsible for unnecessary delay, where representation is substandard, or where the benefits are large in comparison to the amount of time counsel spent on the case, as examples of cases where a 25% contingent fee might unreasonably produce a windfall for the attorney and merit a reduction in fees.

The Commissioner relies on *Hayes v. Secretary of Health & Human Services*, 923 F.2d 418 (6th Cir. 1990), to argue that if counsel received 25% of the award of back benefits, his effective hourly rate would translate to $625.43. To the extent that *Hayes* focuses on effective hourly rate as the primary determinant of reasonableness of a contingent fee, it likely does not survive the Supreme Court's decision in *Gisbrecht*. Moreover, even under *Hayes*, a contingency fee cannot constitute a windfall until it has at minimum reached twice the hourly rate regularly charged by attorneys of similar experience. Even so, it does not follow that a fee amounting to more than twice the regularly charged rate constitutes a windfall *per se.* In *Hayes,* 923 F.2d at 421 the court reasoned that

> "In assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and undercompensate in others. It is the nature of the beast. Double is a floor, not a ceiling."

If the contingent fee in this case translates to about $625.00 per hour, then half that rate is $312.50, which is hardly out of line with the hourly rates of attorneys of comparable skill in Michigan. *See* State Bar of Michigan's 2010 Economics of Law Practice in Michigan Survey,

*Michigan Bar Journal*, Vol. 90, no. 2 (February 2011).[3] But more importantly, given the complex nature of this case, the reasonableness of the time spent (see above section of EAJA fees), the obvious skill of Plaintiff's lawyers, the excellent results obtained, and the absence of any dilatory actions by counsel, I cannot conclude that the contingent fee agreement that provides for attorney fees of 25% of the past-due benefits is unreasonable.[4]

Accordingly, Plaintiff's counsel should be awarded fees under § 406(b) consistent with the contingent fee agreement, that is, 25% of the past-due benefits, or $29,801.85. This amount will, however, be offset by the net amount of EAJA fees payable to Plaintiff.

### III.   CONCLUSION

For these reasons, I recommend that Plaintiff's Application for Attorney Fees Under EAJA [Doc. #28] be GRANTED in the amount of **$8,968.75**. I further recommend that within 14 days of a final order granting the motion, the Commissioner determine whether the Plaintiff owes the Government a pre-existing debt. If no such debt is owed, then payment of the EAJA fees will be made directly to Plaintiff's attorney by operating as an offset to § 406(b) fees. If the Plaintiff does owe a pre-existing debt, the EAJA fees will be offset by the amount of the debt, with any remainder to in turn offset the § 406(b) fees.

I further recommend that Plaintiff's Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b) be GRANTED in the amount of **$29,801.85**, to be offset by any award of EAJA fees.

---

[3] According to the survey, the hourly rate for public benefits lawyers ranges from a low of $175.00 to a high of $500.00 at the 95th percentile, with a mean of $230.00. For attorneys with offices in downtown Detroit, the mean is $290.00, $375.00 at the 75th percentile, and $525.00 at the 95th percentile. In view of the level skill and the quality of work demonstrated by Plaintiff's counsel, not only in this case but in other cases in this district, as well as the experience and reputation of counsel's firm, it would be fair to place counsel at least in the 75th percentile, and possibly as high as the 95th percentile.

[4] I disagree, however, with Plaintiff's suggestion that there are few if any attorneys in Michigan who are willing to litigate Social Security Disability appeals in federal court. While the number of such attorneys may be small relative to, say, personal injury attorneys, the Social Security bar in this district is vibrant, and while the skill level of the attorneys varies, as it does in any field of practice, the best practitioners in this State are the equal of those in Chicago, New York, or anywhere else.

     Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                   s/R. Steven Whalen  
                                                   R. STEVEN WHALEN  
                                                   UNITED STATES MAGISTRATE JUDGE  
Dated: August 15, 2011

___

### CERTIFICATE OF SERVICE

     I hereby certify on August 15, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 15, 2011: **None.**

                                          s/Michael E. Lang  
                                          Deputy Clerk to  
                                          Magistrate Judge R. Steven Whalen  
                                          (313) 234-5217